Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN 347431)
jonathan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
MICHELEA MCZEAL

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELEA MCZEAL,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI CAPITAL AMERICA d/b/a KIA FINANCE AMERICA; SETJO LLC d/b/a KIA OF BEDFORD; TRANS UNION, LLC<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**1.) THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.;**<br><br>**2.) CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.; AND**<br><br>**3.) ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CALIFORNIA CIVIL CODE § 1788 ET SEQ.**<br><br>**4.) CALIFORNIA IDENTITY THEFT ACT, CALIFORNIA CIVIL CODE § 1798.93, ET SEQ.;**<br><br>**5.) NEGLIGENCE**<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Plaintiff Michelea McZeal ("Plaintiff") is a victim of identity theft.

2. An unauthorized individual, believed to be Lela Dozier, used Plaintiff's identity to open a line of credit at Kia of Bedford in Ohio for the purchase of a 2025 Kia Telluride.

3. This purchase was made without Plaintiff's knowledge or consent.

4. Plaintiff, by Plaintiff's attorneys, brings this action to challenge the actions of Hyundai Capital America d/b/a Kia Finance America ("Kia Finance") and Trans Union, LLC ("Trans Union"), regarding Defendants' derogatory and unlawful reporting on Plaintiff's credit reports.

5. Plaintiff, by Plaintiff's attorneys, also brings this action to challenge the actions of Setjo, LLC d/b/a Kia of Bedford ("Kia of Bedford").

6. Furthermore, Plaintiff challenges the actions of Kia Finance for unlawfully attempting to collect an erroneous debt—the same debt by which Kia Finance furnished inaccurate information to Trans Union.

7. Moreover, Kia Finance continues to claim that Plaintiff owes debt that was incurred as a result of identity theft in violation of the California Identity Theft Act ("CITA"), Cal. Civ. Code § 1798.92 *et seq*.

8. Plaintiff timely disputed the adverse credit report with Trans Union.

9. Trans Union provided the disputed adverse credit information to Kia Finance.

10. Plaintiff also timely notified Kia Finance in writing that he was the victim of identity theft.

11. Trans Union failed to complete a reasonable investigation or take corrective action.

12. Trans Union verified the reporting and refused to delete the fraudulent tradeline.

13. Kia Finance failed to complete a reasonable investigation or take corrective action.

14. To date, Kia Finance has not provided Plaintiff any written response to his dispute letter.

15. Kia Finance continues to furnish the inaccurate information and claim that the full amounts are due.

16. To date, Defendants have refused to reasonably investigate Plaintiff's dispute.

17. Instead, Kia Finance continues to knowingly furnish inaccurate information to Trans Union.

18. Plaintiff, by Plaintiff's attorney, brings this action against Kia Finance for actual damages, statutory damages, punitive damages, injunctive relief, restitution, attorney fees, and costs for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq*., the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq*. ("RFDCPA"), and the California Identity Theft Act ("CITA"), Cal. Civ. Code § 1798.92 *et seq*.

19. Plaintiff, by Plaintiff's attorney, brings claims against Trans Union for violations of the FCRA and CCRAA.

20. Plaintiff, by Plaintiff's attorney, brings claims against Kia of Bedford for negligence.

21. Plaintiff makes these allegations on information and belief, except for those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

22. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

23. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

24. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all of their agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FCRA and CCRAA**

25. Congress enacted the FCRA in 1970 to require that consumer reporting agencies adopt and implement "reasonable procedures" for ensuring that credit information about a consumer was collected, maintained, and dispensed "in a manner which is fair and equitable to the consumer with regard to the confidentiality, accuracy, relevancy and proper utilization of such information[.]" 15 U.S.C. §1681(b); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 62 (2007) (describing the FCRA's "ambitious objective…which uses expansive terms to describe the adverse effects of unfair and inaccurate credit reporting and the responsibilities of consumer reporting agencies."). Congress noted that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with of fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, who are called "furnishers." *See* 15 U.S.C. § 1681s-2.

26. The Consumer Credit Reporting Agencies Act (CCRAA), California's version of the FCRA, was originally enacted in 1975. In language virtually identical to that found in the FCRA, the California Legislature stated the CCRAA's purpose was "to require that consumer credit reporting agencies adopt reasonable procedures" for handling credit information so as to ensure it was handled in a manner which was "fair and equitable to the consumer with regard to confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with

the requirements of this title."[1] In 1993, the California Legislature amended the CCRAA and added a section that imposes duties on furnishers similar to those found in the FCRA. For example, Cal. Civ. Code § 1785.25(a) provides that the furnisher "shall not" furnish credit information to "any credit reporting agency if the person [furnisher] knows or should know the information is incomplete or inaccurate."

## FDCPA AND RFDCPA

27. In enacting the FDCPA, Congress found that:

a. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

b. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

c. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

d. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

e. It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

[1] California Civil Code § 1785.1(d)

> competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses.

15 U.S.C. § 1692.

28. Similarly, when enacting the RFDCPA, the California Legislature found that:

> The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civ. Code § 1788.1(a)(1).

29. The FDCPA and the RFDCPA are both strict liability statutes. That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 (9th Cir. 2010) ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

30. To further protect consumers, claims under the FDCPA and RFDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales*, 660 F.3d at 1061. This standard is lower than the "reasonable debtor" standard and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id*. In addition, a plaintiff need not even have been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor—someone who is uninformed and naïve—would have likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

## JURISDICTION AND VENUE

31. Jurisdiction of this court arises pursuant to 28. U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, including under the FCRA, a federal statute, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

32. This action arises out of Kia Finance's violations of the FCRA, CCRAA, RFDCPA, and the CITA in this district. This action also arises out of TransUnion's violations of the FCRA and CCRAA in this district.

33. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions leading to the claims occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

34. Plaintiff is a natural person who resides in the County of Los Angeles, State of California. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and by Cal. Civ. Code § 1785.3(b).

35. Defendant Kia Finance is a California corporation with its principal place of business in Irvine, California

36. Defendant Trans Union is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

37. Kia Finance is a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences and is a "person" who "furnished information on a specific transaction or experience to any consumer credit reporting agency" under Cal. Civ. Code §§ 1785.3(j) and 1785.25.

38. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. 1681a(f).

39. This case involves money due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action

arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

## FACTUAL ALLEGATIONS

40. Plaintiff had been the victim of burglaries in 2023 and 2024. At the time, Plaintiff only slightly suspected that his long-time acquaintance, Lela Dozier, may have been involved.

41. For the 2023 burglary, Ms. Dozier had repeatedly told Plaintiff he needed to lock his bedroom window only weeks before the burglary took place.

42. For the 2024 burglary, Ms. Dozier visited her parents in California. Plaintiff allowed her to stay in his home and temporarily gave her his house keys. A few weeks later burglars came in through Plaintiff's front door and took his safe which contained personal documents including his social security card.

43. Around 2025, Lela Dozier, purchased airline tickets for Plaintiff to visit her in Ohio.

44. When Plaintiff decided not to visit, Ms. Dozier called Plaintiff and fabricated a story that she would refund the tickets.

45. Ms. Dozier sent text messages to Plaintiff, regarding her attempts to obtain a refund credit for the airline ticket purchase.

46. In the text messages to Plaintiff, Ms. Dozier stated she needed a photograph of Plaintiff's driver's license to obtain the refund.

47. Ms. Dozier informed Plaintiff that while the airline had agreed to provide a refund credit one month earlier, it would take approximately 30 days to obtain the credit, and the airline required another photograph of the backside of Plaintiff's driver's license in order to complete the refund.

48. Plaintiff provided Ms. Dozier with photographs of the front and back of his driver's license, under the belief that his driver's license information would be used solely for the stated purpose of the refund credit.

49. In or around January 2026, Plaintiff became aware that his personal information was used to open multiple lines of credit that he did not authorize.

50. These unauthorized lines of credit included an auto loan at the Kia of Bedford in Ohio for a 2025 Kia Telluride in the amount of $38,924.00.

51. In the Motor Vehicle Lease Agreement for the 2025 Kia Telluride, Plaintiff was named as the Lessee, and “Lela Dozier” was named as the Co-Lessee.

52. The Lease Agreement shows Plaintiff’s address as based out of Akron, Ohio, despite the fact that Plaintiff has never resided in Ohio, and Plaintiff maintains a California driver’s license.

53. Trans Union reported this unauthorized auto-loan account.

54. On January 21, 2026, Plaintiff submitted dispute letters to Trans Union and Kia of Bedford regarding, among other unauthorized credit, the Kia Finance account.

55. Upon information and belief, Trans Union forwarded the January 21, 2026 dispute letters to Kia Finance as required by law.

56. On January 30, 2026, Plaintiff signed an Affidavit of Identity Theft and Fraud regarding the auto loan for the purchase of the 2025 Kia Telluride from the Kia of Bedford.

57. On January 31, 2026, Plaintiff filed an incident report with the County of Los Angeles, documenting the identify theft and fraudulent auto loan.

58. Plaintiff repeatedly reached out to the dealership, Kia of Bedford, to explain the fraud that had occurred.

59. However, despite Plaintiff’s repeated efforts, the dealership refused to remove him from the lease and/or finance agreement.

60. Specifically, Plaintiff spoke to two individuals, both named “Mitch,” who told him that his social security number had been used for the purchase. Plaintiff believes Ms. Dozier obtained his social security number during the prior burglaries.

61. In a phone call shortly after the purchase and before Plaintiff had been made aware of the fraud, Ms. Dozier confided to Plaintiff that she had fabricated pay stubs in order to purchase a vehicle.

62. Aside from using Plaintiff's social security information, Kia of Bedford has not told Plaintiff which other information or procedures, if any, had been used to verify his involvement in the purchase.

63. On March 4, 2026, Defendant Trans Union completed an investigation of Plaintiff's online dispute and verified the Kia Finance account as accurate.

64. As of March 2026, Defendant Trans Union's tradeline reflected the Account Name: KIA MOTOR FINANCE, Account Number: 251625****, Balance: $38,924, Date Opened: 10/21/2025, Pay Status: Account 30 Days Past Due Date.

65. On May 15, 2026, Plaintiff filed an Identity Theft Affidavit with the Federal Trade Commission.

66. On May 19, 2026, Plaintiff mailed a dispute letter to Defendant TransUnion.

67. The dispute letter included a copy of Plaintiff's driver's license, text messages demonstrating how Lela Dozier induced Plaintiff to provide photographs of his driver's license, the Motor Vehicle Lease Agreement sent to Plaintiff by Defendant Kia Finance, Plaintiff's Police Report, Plaintiff's FTC Identity Theft Affidavit, and Plaintiff's initial Affidavit of Identity Theft and Fraud which included copies of his January 21, 2026 disputes, and a copy of his March 4, 2026 Trans Union dispute results.

68. Upon information and belief, Trans Union forwarded the May 19, 2026 dispute letter to Kia Finance as required by law.

69. On May 27, 2026, Plaintiff received a phone call from Sheryl Ramos with Defendant Kia Finance attempting to collect a debt on the account and claiming that Plaintiff had been the primary individual associated with the contract.

70. Upon information and belief, this was the second phone call from Ms. Ramos as Plaintiff believes she called once prior attempting to collect on this same alleged debt.

71. On June 3, 2026, Plaintiff received a phone call from Vangie Go with Defendant Kia Finance in an attempt to collect on the same account.

72. On June 3, 2026, Plaintiff mailed a Notice of Error and Identity Theft to Defendant Kia Finance and Kia of Bedford indicating that he was a victim of fraud and identity theft pursuant to Cal. Civ. Code § 1788.18.

73. The dispute letter included the same supporting documentation as Plaintiff's Trans Union dispute letter except for a copy of the March 4, 2026, Trans Union dispute results.

74. On or about June 16, 2026, Defendant Trans Union responded to Plaintiff's dispute but refused to delete the Kia Finance tradeline from Plaintiff's consumer credit report.

75. Kia Finance has since called Plaintiff numerous times in an attempt to collect this fraudulent debt, including but not limited to July 25, 27, 28, and 31.

76. Despite receiving Plaintiff's dispute letters and, on information and belief, notice of Plaintiff's dispute from Defendant Trans Union, Defendant Kia Finance failed to respond to Plaintiff and failed to properly investigate, remove, and/or otherwise correct the fraudulent account.

77. To date, the fraudulent Kia Finance account continues to appear on Plaintiff's consumer credit report.

## ACTUAL DAMAGES

78. Plaintiff has suffered actual damages as a result of these actions, omissions, and inaction by these Defendants in the form of, damage to credit, loss of opportunity to benefit from credit, loss of money, invasion of privacy by having to discuss this problem with others, personal embarrassment related to disclosure of the problem and to the consequences from it, loss of personal reputation in the eyes

of others, loss of productive time which was instead spent trying to fix the problem, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

79. Plaintiff's injuries are concrete. Defendants' conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation. Furthermore, Congress and the California legislature enacted the FCRA and CCRAA to protect consumers from precisely the conduct described in this Complaint. Congress and the California legislature found that the banking system is dependent upon fair and accurate credit reporting; and inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Consequently, the FCRA and CCRAA were enacted to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The alleged transgressions by Defendant would, if left unchecked in a competitive marketplace, naturally propagate had Congress and the California legislature not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

## Causes of Action Claimed by Plaintiff

## **Count I**

## **Violation of the Fair Credit Reporting Act**

## **(Against Defendant Kia Finance)**

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, Defendant Kia Finance violated 15 U.S.C. §1681s-2(b)(l)(A) by failing to fully and properly investigate Plaintiff's disputes.

82. Defendant Kia Finance understood the nature of Plaintiff's disputes when it received Plaintiff's dispute letters along with supporting documentation and exhibits.

83. On one or more occasions within the two years prior to the filing of this suit, Defendant Kia Finance violated 15 U.S.C. §1681s-2(b)(l)(B) by failing to review all relevant information provided by the consumer reporting agencies.

84. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, Defendant Kia Finance violated 15 U.S.C. §1681s-2(b)(l)(C) and (D) by reporting Plaintiff's credit files with Defendant TransUnion without also including a notation that the inaccurate status of the debt was disputed and/or by failing to correctly report results of an accurate investigation.

85. As a result of the conduct, actions and inactions of Defendant Kia Finance, Plaintiff suffered actual damages, including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress. This inaccurate reporting has serious ramifications on Plaintiff and creates significant undue distress.

86. The conduct, actions and inactions by Defendant Kia Finance was willful, rendering Defendant Kia Finance liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

87. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants Kia Finance in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and §1681o.

(AGAINST DEFENDANT TRANS UNION)

88. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

89. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, Defendant Trans Union violated 15 U.S.C. §1681i by failing to fully and properly investigate Plaintiff's dispute.

90. Defendant Trans Union understood the nature of Plaintiff's dispute when they received Plaintiff's Dispute Letters.

91. As a result of the conduct, actions and inactions of Defendant Trans Union, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

92. Plaintiff was and remains injured because of Trans Union's inaccurate reporting.

93. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Trans Union.

94. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Trans Union.

COUNT II

VIOLATION OF THE CCRAA

CAL. CIV. § 1785.25(A)

(AGAINST KIA FINANCE AND TRANS UNION)

95. Plaintiff incorporates all of the above paragraphs of this Complaint as though fully stated herein.

96. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, Defendant Kia Finance violated Cal. Civ. §1785.25(a) by providing incomplete and/or inaccurate information about Plaintiff to one or more consumer credit reporting agencies when it knew or should have known that the information was incomplete or inaccurate.

97. Defendant Kia Finance failed to use reasonable procedures to provide maximum possible accuracy on Plaintiff's credit reports.

98. Defendant Trans Union failed to adequately address the accuracy of Plaintiff's disputes related to the inaccurate debt in violation of Cal. Civ. Code § 1785.16.

99. In so doing, Defendant Trans Union failed to maintain reasonable procedures necessary to prevent this inaccurate, derogatory information from appearing in Plaintiff's consumer credit report.

100. As a result of the conduct, actions and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

101. The conduct, actions and inactions Defendants were willful, rendering Defendants liable for punitive damages in an amount of up to $5,000 for each violation to be determined by the Court pursuant to Cal. Civ. Code § 1731(a)(2)(B). In the alternative Defendants were negligent entitling the Plaintiff to recover under Cal. Civ. Code § 1731(a)(1).

102. Plaintiff is entitled to recover actual damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to Cal. Civ. Code §1731(a)(1).

## COUNT III

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## CAL CIV. CODE §1788.17
## (AGAINST DEFENDANT KIA FINANCE)

103. Plaintiff incorporates all of the above paragraphs of this Complaint as though fully stated herein.

104. A defendant violates § 1788.17 of the RFDCPA when it fails to comply with the provisions of 15 U.S.C. § 1692b to 1692j, inclusive.

105. Defendant Kia Finance violated § 1788.17 of the RFDCPA when it willfully engaged in conduct, the natural consequence of which are violations of 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), 1692d.

106. A debt collector violates section 1692e of the FDCPA when it uses any false, deceptive, or misleading representation or means in connection with the collection of any debt.

107. A debt collector violates section 1692e(2)(a) when it falsely represents the character, amount, or legal status of a debt. Defendant Kia Finance violated section 1692e(2)(a) when they, among other qualifying actions and omissions, willfully misrepresented that Plaintiff owed any amount to it at all.

108. A debt collector violates section 1692e(10) when it uses any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. Defendants Kia Finance violated section 1692e(10) when they attempted to collect on amounts not owed and falsely furnished this information to credit bureaus.

109. A debt collector violates section 1692f of the FDCPA when it uses unfair or unconscionable means to collect or attempt to collect any debt. A debt collector violates section 1692f(1) of the FDCPA when it collects or attempts to collect any amount unless collection of such amount is authorized by agreement or permitted by law. Defendant Kia Finance violated section 1692f when they, among other qualifying

actions and omissions, willfully and without justification, attempted to collect the balance of the improperly opened account from Plaintiff.

110. A debt collector violates section 1692d when it engages in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Defendant Kia Finance violated section 1692d when they, among other actions and omissions, willfully and without justification, repeatedly attempted to collect the debt and falsely furnished this information to credit bureaus, despite Plaintiff's repeated insistence that this not occur when all parties reasonably should have known the account had been fraudulently opened.

## COUNT IV

## VIOLATION OF THE CALIFORNIA IDENTITY THEFT ACT

## CAL. CIV. CODE § 1798.93

## (AGAINST DEFENDANT KIA FINANCE)

111. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

112. The foregoing acts and omissions of Defendant Kia Finance constitute multiple violations of CITA.

113. Plaintiff brings this cause of action pursuant to Cal. Civ. Code § 1798.93. Plaintiff is the victim of identity theft in connection with the alleged claims of Defendant Kia Finance based upon alleged debt(s) resulting from identity theft.

114. Plaintiff provided written notice to Defendant Kia Finance that identity theft existed as to the fraudulent Account 251625**** in connection with the Motor Vehicle Lease Agreement for the 2025 Kia Telluride, including a copy of the Police Report, two identity theft affidavits, screenshots of the text message correspondences, and a copy of Plaintiff's Driver's License. Moreover, the lease itself is suspicious as Plaintiff is listed as the owner (not co-signer), has never resided in Ohio, and he uses a California driver's license. Moreover, Plaintiff repeatedly alerted the dealership of fraudulent conduct against him.

115. Defendant Kia Finance failed to diligently investigate Plaintiff's notification of identity theft.

116. After Defendant Kia Finance was presented with the facts that entitled Plaintiff to a judgment pursuant to Cal. Civ. Code § 1798.93, Defendant Kia Finance continued to purport to have a claim or interest in collecting from Plaintiff the debt incurred as a result of identity theft.

117. As a result of each and every violation of the CITA, Plaintiff is entitled to actual damages, including emotional distress damages, attorney's fees and costs, and any equitable relief the court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5). Additionally, Plaintiff is entitled to a civil penalty, in addition to any other damages, of up to $30,000.00, from each of Defendants Chase and TBF Financial, pursuant to Cal. Civ. Code § 1798.93(c)(6).

118. In addition, Plaintiff is entitled to a declaration that Plaintiff is not obligated to Defendant Kia Finance on any claim under Cal. Civ. Code § 1798.93(c)(1); a declaration that any claim to payment, security interest or other interest Defendant Kia Finance purportedly has regarding the Account at issue against Plaintiff is void and unenforceable, under Cal. Civ. Code § 1798.93(c)(2); an injunction restraining Defendant Kia Finance from collecting or attempting to collect on the claim, from enforcing or attempting to enforce any security interest or other interest in Plaintiff's property in connection with the claim, or from enforcing or executing on any judgment against Plaintiff on the claim under Cal. Civ. Code § 1798.93(c)(3); and the dismissal of any cause of action based on a claim, which arose because of identity theft under Cal. Civ. Code § 1798.93(c)(4).

## COUNT IV

## NEGLIGENCE

## (AGAINST DEFENDANT KIA OF BEDFORD)

119. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

120. Plaintiff believes and thereon alleges that Kia of Bedford owed various duties to Plaintiff. Specifically, Kia of Bedford owed a duty to Plaintiff to protect him from fraudulent purchases being made using his identity. Further, Kia of Bedford owed a duty to Plaintiff to investigate and reverse any fraudulent transactions if Plaintiff timely notified Defendant of the fraud.

121. Kia of Bedford breached its duties by allowing a third party to enter into a fraudulent transaction using Plaintiff's identity and for failing to investigate and correct the situation once Plaintiff notified Kia of Bedford.

122. Kia of Bedford failed to perform proper due diligence prior to using Plaintiff's identity for a fraudulent lease.

123. Plaintiff believes and thereon alleges that as a proximate result of Kia of Bedford's negligence, Plaintiff has suffered severe emotional distress, loss of credit, and lost time.

124. Due to the egregious violations alleged herein, Plaintiff asserts that Kia of Bedford breached its duties in an oppressive, malicious, despicable, gross and wantonly negligent manner. This conduct establishes Kia of Bedford's conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

a) Actual damages pursuant to 15 U.S.C. §§ 1681n, and 1681o, against Kia Finance and Trans Union and for Plaintiff;

b) Statutory damages pursuant to 15 U.S.C. §§ 1681n, and 1681o in the amount of $1,000, against each of Kia Finance and Trans Union and for Plaintiff;

c) Punitive damages pursuant to 15 U.S.C. § 1681n, against Kia Finance and Trans Union and for Plaintiff;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, and 1681o, against Kia Finance and Trans Union and for Plaintiff;

e) Award of actual damages pursuant to Cal. Civ. Code § 1785.31 (CCRAA) against Kia Finance and Trans Union and for Plaintiff;

f) Award of punitive damages of $5,000 for each violation as the court deems proper pursuant to Cal. Civ. Code § 1785.31 (CCRAA) against Kia Finance and Trans Union and for Plaintiff;

g) Award of costs of litigation and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31 (CCRAA) against Kia Finance and Trans Union and for Plaintiff;

h) An order directing that each Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

i) An order directing that each Defendant send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information;

j) Award of actual damages pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against Kia Finance and for Plaintiff,

k) Award of statutory damages in the amount of $1,000.00 pursuant to Cal. Civ. Code § 1788.30 (RFDCPA) against Kia Finance and for Plaintiff;

l) Award of costs of litigation and reasonable attorney's fees pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against Kia Finance and for Plaintiff; and

m) Actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5) (CITA) against Kia Finance and for Plaintiff;

n) An award of any equitable relief the Court deems appropriate, pursuant to Cal. Civ. Code § 1798.93(c)(5) against Kia Finance and for Plaintiff;

o) A civil penalty of up to $30,000.00, pursuant to Cal. Civ. Code § 1798.93(c)(5) against Kia Finance and for Plaintiff;

p) Costs and reasonable attorneys' fees pursuant to Cal. Civ. Code § 1798.93(c)(5) against Defendant Kia Finance and for Plaintiff;

q) A declaration that Plaintiff is not obligated to Kia Finance on any claims pursuant to Cal. Civ. Code § 1798.93(c)(1) against Kia Finance and for Plaintiff;

r) A declaration that any security interest, or other interest, Kia Finance purportedly obtained in Plaintiff's property, in connection with any claim, is void and unenforceable pursuant to Cal. Civ. Code § 1798.93(c)(2) against Kia Finance and for Plaintiff;

s) The dismissal of any cause of action filed based on a claim, which arose as a result of identity theft pursuant to Cal. Civ. Code § 1798.93(c)(4) against Kia Finance and for Plaintiff;

t) An injunction restraining Kia Finance from collecting or attempting to collect on any claim based on the fraudulent use of the Accounts due to Identity Theft and from enforcing or attempting to enforce any security interest or other interest in Plaintiff's property in connection with the claim, or from enforcing or executing on any judgment against Plaintiff on the claim pursuant to Cal. Civ. Code § 1798.93(c)(3) against Kia Finance and for Plaintiff;

u) General damages according to proof against Kia of Bedford for Plaintiff;

v) Special damages according to proof against Kia of Bedford for Plaintiff;

w) Punitive damages according to proof against Kia of Bedford for Plaintiff;

x) Reasonable attorney's fees and costs of suit incurred herein against Kia of Bedford for Plaintiff; and

y) Award to Plaintiff of such other and further relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

125. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED: August 18, 2026

BY: /s/ Ryan L. McBride
Ryan L. McBride, Esq.
Attorney for Plaintiff